# In the United States Court of Federal Claims

| | |
|---|---|
| ARTHUR CONTRERAS, | No. 19-vv-0491 |
| Petitioner, | |
| v. | Filed Under Seal: March 10, 2022 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Publication: May 19, 2022[1] |
| Respondent. | |

*Paul Adrian Green*, Law Office of Paul Green, Pasadena, California for Petitioner.

*Mary E. Holmes*, United States Department of Justice, Civil Division, Torts Branch, Washington, D.C. for Respondent. With her on the briefs are Lara A. Englund, Assistant Director, Civil Division, Torts Branch; Heather L. Pearlman, Deputy Director, Civil Division, Torts Branch; C. Salvatore D'Alessio, Acting Director, Civil Division, Torts Branch; Brian M. Boynton, Acting Assistant Attorney General, United States Department of Justice, Washington, District of Columbia.

**MEMORANDUM AND ORDER**

On April 2, 2019, Petitioner Arthur Contreras (Petitioner) filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act or Act), alleging that the Shingrix and Pneumococcal conjugate (PCV-13)[2] vaccines injured him. Petition for Vaccine Compensation (ECF No. 1) (Pet.). After Respondent, the Secretary of the U.S. Department of Health and Human Services (Respondent), filed a Rule 4(c) Report explaining that none of

---

[1] This Memorandum and Order was filed under seal in accordance with Vaccine Rule 18(b), and the parties were afforded 14 days to propose redactions. As the parties did not propose any redactions, this Court is publicly reissuing this Memorandum and Order. The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

[2] Petitioner refers to the vaccine as "Pneumvax" in his Petition. Pet. at 1; *see infra* at 3-4.

Petitioner's alleged injuries were included on the Vaccine Injury Table, Petitioner filed a Motion to Dismiss (ECF No. 18) his petition, which the Special Master granted. *See* Decision Dismissing Petition (ECF No. 19). Subsequently, Petitioner filed a motion seeking attorneys' fees and costs, which the Special Master granted in part. *See* Petitioner's Motion for Attorney Fees and Costs (ECF No. 22); Decision on Final Attorneys' Fees and Costs (ECF No. 25) (Decision on Fees).

Pending before the Court is Respondent's Motion for Review of the Special Master's decision awarding Petitioner attorneys' fees and costs. Respondent's Motion for Review (ECF No. 27) (Mot.). Respondent contends that the Special Master erred in awarding any attorneys' fees and costs in this action. *See id.* Specifically, Respondent argues that the Special Master abused her discretion by (1) determining that Petitioner had a reasonable basis to claim that the PCV-13 vaccine caused his injury, and (2) failing to address whether Petitioner had a reasonable basis for alleging his injuries lasted more than six months, as required when considering an award of attorneys' fees and costs. *See* Respondent's Memorandum in Support of Motion for Review (ECF No. 28) (Resp. Mem.). Accordingly, Respondent urges this Court to vacate the Special Master's decision and deny Petitioner's motion for attorneys' fees and costs. *See id.* For the reasons explained below, Respondent's Motion for Review (ECF No. 27) is **GRANTED**.

BACKGROUND

I. Petitioner's Medical History

On September 7, 2018, Petitioner received the Shingrix vaccine in his left arm and the PCV-13 vaccine in his right arm. Exhibit 2 to Petitioner's Petition for Vaccine Compensation (ECF No. 1-3) (Pet. Ex. 2) at 49. Two days later, Petitioner visited an urgent care center complaining of "middle back pain after [the] shingles vaccine." *Id.* at 2. Specifically, he complained of "sharp needle" pain on the left side of his back and under the shoulder blade. *Id.*

2

The nurse practitioner who examined him noted he had a "macularpapular [sic] rash [on his] left shoulder blade around [the] T7 region with one closed vesicle," and that he experienced tenderness in the affected area. *Id.* at 5. The nurse practitioner, Theresa Anderson, diagnosed Petitioner with acute thoracic back pain and a "shingles outbreak." *Id.* Given the timing of Petitioner's vaccines and the onset of his symptoms, she instructed Petitioner to follow up with his primary care physician "and let them know about shingle outbreak after vaccine." *Id.* at 10.

Petitioner followed the nurse practitioner's advice and visited his primary care physician, Dr. Tejas Patel, on September 11, 2018. *Id.* at 60-62. Petitioner complained that he had a "[r]ed rash on [the] back and stomach [] over the weekend," and he explained that after receiving his vaccines he "began to have abdo[minal] pain, and a rash broke out." *Id.* at 60-61. Dr. Patel diagnosed him with herpes zoster (shingles) and prescribed him "Valtrex for 7 [days]." *Id.* at 61.

Petitioner made several follow-up visits to Dr. Patel over the next three months. On a September 19, 2018 visit he reported suffering "severe pain," especially at night, and "tingling burning stabbing pain." *Id.* at 59. Dr. Patel diagnosed Petitioner with post-herpetic neuritis and did not note anything about Petitioner's skin. *Id.* at 58-59. Petitioner again visited Dr. Patel on October 3, 2018, and reported swelling on the left side of his abdomen. *Id.* at 55-57. Dr. Patel maintained his diagnosis of postherpetic neuritis and prescribed additional pain medication. *Id.* at 57. Two weeks later, on October 17, 2018, Petitioner followed up with Dr. Patel complaining about abdominal pain. *Id.* at 53-55. Dr. Patel noted a rash on Petitioner's back, wrapping around to his upper abdomen, that was healing. *Id.* at 55. Petitioner had another follow-up appointment with Dr. Patel on November 9, 2018. *Id.* at 51. Petitioner received additional pain medication, but Dr. Patel's notes do not mention the status of Petitioner's rash. *Id.* at 51-53. Finally, Petitioner

visited Dr. Patel on December 4, 2018, when Dr. Patel again noted post-herpetic neuritis but did not document the status of Petitioner's rash. *Id.* at 49-51.

After the December visit with Dr. Patel, Petitioner visited a neurologist, Dr. Ahed Hanna, for evaluation of his post-herpetic neuritis.[3] *See* Exhibit 3 to Petitioner's Petition for Vaccine Compensation (ECF No. 1-4) (Pet. Ex. 3) at 5-6. Dr. Hanna's notes from that January 2, 2019 visit document the onset of Petitioner's "blisters and rash" that developed on the left side of his abdomen along with "severe pain." *Id.* at 5. Dr. Hanna notes that these symptoms developed after Petitioner received "the zoster vaccine," which is Shingrix; Dr. Patel's notes do not mention the PCV-13 vaccine. *Id.* Dr. Hanna further noted at that visit that Petitioner's "rash has resolved but he has scarring." *Id.* Further, Petitioner was still experiencing "numbness, tingling and burning on his side." *Id.* Petitioner followed up with Dr. Hanna about postherpetic neuritis on January 7, 2019, and again on March 14, 2019, but Dr. Hanna's notes do not document the status of Petitioner's scarring. *Id.* at 1-4. The medical records before the Special Master do not extend beyond March 2019. *See generally*, Pet. Ex. 2; Pet. Ex. 3.

II. <u>Procedural History</u>

On April 2, 2019, Petitioner filed a claim for compensation under the Vaccine Act. *See* Pet. He alleged that "concurrent Shingrix and Pneumvax vaccinations" caused several "injuries, including shingles, maculopapular rash left shoulder, post-herpetic neuritis, and other postherpetic nervous system involvement." *Id.* at 1. While the Petition mistakenly referenced Pneumvax, Petitioner's medical records reflect that he received the PCV-13 vaccine, and there is no dispute about which vaccines Petitioner received. Pet. at 1; Pet. Ex. 2 at 49. To support his claim,

---

[3] Petitioner's neurologist refers to this condition as "postherpetic neuralgia." *See, e.g.*, Pet. Ex. 3 at 1.

4

Petitioner attached his medical records and an affidavit to his Petition. *See* Pet. Ex. 2, Pet. Ex.3, Pet. Ex. 4 (ECF No. 1-5). Although Shingrix is not eligible for compensation under the Vaccine Act, PCV-13 is a vaccine covered by the Act. *See* Resp. Rule 4(c) Report (ECF No. 16) at 1 n.1.

On May 4, 2020, Respondent filed a Rule 4(c) report, contending that compensation would be inappropriate in Petitioner's case. Resp. Rule 4(c) Report at 2. Respondent argued that none of Petitioner's alleged injuries were included on the vaccine injury table for PCV-13, meaning that Petitioner "is not entitled to a presumption of vaccine causation." *Id.* at 5. Respondent also asserted that Petitioner could not prove causation-in-fact because "Petitioner has not offered a reputable scientific or medical theory establishing that PCV-13 can cause 'shingles, maculopapular rash left shoulder, post-herpetic neuritis, and other postherpetic nervous system involvement' (general causation) or that it did so in his case." *Id.* Accordingly, Respondent argued that Petitioner failed to meet "his *prima facie* burden to show causation-in-fact, and this case should be dismissed." *Id.* at 7.

On July 6, 2020, Petitioner filed a status report responding to the government's Rule 4(c) report conceding "that the Shingrix vaccination that he received in his left arm is not a covered vaccine under the National Vaccine Injury Compensation Program." Petitioner's Status Report (ECF No. 17) at 1. Petitioner explained that while he believed he had a reasonable basis to file his Petition because he suffered some of the adverse symptoms outlined in the PCV-13 package insert, including "[r]edness, swelling, pain, or tenderness . . . and . . . as with any medicine, there is a very remote chance of a vaccine causing severe allergic reaction, other serious injury, or death," he preferred "not to incur the cost of an expert to support his Petition by establishing causation in

5

fact / exacerbation." *Id.* at 2 (quoting ECF No. 17-1). Thus, Petitioner conceded that "his case should be dismissed." *Id.*

Accordingly, on July 9, 2020, Petitioner filed a motion requesting the Special Master dismiss his case. *See* Motion for a Decision Dismissing Petition (ECF No. 18). In that motion, Petitioner conceded that "[a]n investigation of the facts and science supporting his case has demonstrated . . . that he will be unable to prove that he is entitled to compensation in the Vaccine Program." *Id.* at 1. On July 10, 2020, the Special Master granted Petitioner's motion and dismissed the action. *See* Decision Dismissing Petition (ECF No. 19).

Following dismissal of his Petition, Petitioner filed a motion for attorneys' fees and costs. *See* Petitioner's Motion for Attorney Fees and Costs (ECF No. 22). Petitioner alleged that he was entitled to such fees and costs because he filed his Petition in good faith and with a reasonable basis. *See id.* at 3-5. Specifically, Petitioner pointed to a PCV-13 vaccine information statement (VIS)[4] – commonly referenced as a "package insert" – introduced for the first time along with his motion for costs and attorneys' fees, as providing a reasonable basis for his claim. *Id.* at 5; ECF No. 17-1. Petitioner contended that a reasonable basis for an award of fees and costs existed because the PCV-13 vaccine package insert listed "rash" as a potential "adverse reaction," and "[t]he injuries alleged in this case are shingles, a maculopapular rash on Petitioner's left shoulder,

---

[4] The National Vaccine Childhood Injury Act requires all vaccine providers to give the appropriate VIS to the patient, or legal guardian, prior to administering a dose of specific vaccines. 42 U.S.C. § 300aa-26. A VIS must include a description of the vaccine's benefits, a description of the vaccine's associated risks, and a statement about the availability of the National Vaccine Injury Compensation Program. *Id.*

6

post-herpetic neuritis, and other postherpetic nervous system involvement." *Id.* at 4-5; Exhibit C (ECF No. 22-4) at 1.

The Special Master granted in part Petitioner's motion for attorneys' fees and costs over the Respondent's objections. *See* Decision on Fees at 1-2. First, the Special Master held that Petitioner brought his claim in good faith. *See id.* at 7. Second, the Special Master held that although "[t]he filings in this case are minimal," they "include enough evidence to establish [a] reasonable basis" for Petitioner's claim. *Id.* Accordingly, the Special Master held that Petitioner was entitled to certain attorneys' fees and costs but did not grant Petitioner the full amount of requested fees. *See id.* at 8-10. While the Petitioner requested $18,540.00 in costs and fees, the Special Master awarded $16,269.00, as Petitioner's counsel billed time attributable to learning about the Vaccine Program, which is normally considered non-compensable time. *Id.* at 8.

The Special Master's decision relied principally on two points: that (1) "Petitioner developed a rash after receiving vaccinations on September 7, 2018," and (2) "[t]he PCV-13 vaccine package insert states that a rash can be an adverse reaction after vaccination." *Id.* The Special Master dismissed the medical records' attribution of Petitioner's rash to shingles because "the package insert does not limit rash development to one that is unassociated with a specific condition." *Id.* Additionally, the Special Master held that the urgent care nurse practitioner's note in Petitioner's medical records recommending "that he 'F/U with [his primary care physician] and let them know about shingle[s] outbreak after vaccine' . . . suggests that Petitioner's urgent care medical provider questioned the connection between Petitioner's shingles outbreak and the vaccines he received." *Id.* at 8 (quoting Pet. Ex. 2 at 10). The Special Master concluded that the urgent care nurse practitioner's note in his medical records and the PCV-13 package insert

7

"constitutes more than a mere scintilla of evidence in support of the petition." Decision on Fees at 8.

On November 1, 2021, Respondent filed the present Motion for Review of the Special Master's decision to award costs and attorneys' fees to Petitioner. Mot. at 1. Petitioner responded substantively to Respondent's Motion for Review, and in doing so introduced new evidence, comprising photos and emails related to Petitioner's scarring, to buttress his claim that he had a reasonable basis to file his Petition. *See* Petitioner's Memorandum in Opposition to Respondent's Motion for Review (ECF No. 30-1) (Pet.'s Mem.); Exhibit D (ECF No. 30-6). Respondent moved to exclude Petitioner's new evidence as untimely. *See* Motion to Exclude Petitioner's Untimely Evidence (ECF No. 32). On December 15, 2021, this Court granted Respondent's motion to exclude and struck the new evidence pursuant to United States Court of Federal Claims Vaccine Rule 8(f), as such documents and photos were not part of the record below and were not before the Special Master when she considered Petitioner's motion for attorneys' fees and costs. *See* Order Granting Respondent's Motion to Exclude Petitioner's Untimely Evidence (ECF No. 35). Respondent's Motion for Review is now ripe for consideration.

## STANDARD OF REVIEW

This Court has jurisdiction to review a special master's decision under the Vaccine Act. *See* 42 U.S.C. § 300aa-12(e)(1). When reviewing a special master's decision, this Court may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's discretion.

*Id.* § 300aa-12(e)(2).  On this Court's review, the arbitrary and capricious standard applies to factual determinations, the abuse of discretion standard applies to discretionary rulings, and the "not in accordance with the law" standard applies to legal determinations.  *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 874 n.10 (Fed. Cir. 1992).

As special masters have discretion to award attorneys' fees and costs to an unsuccessful petitioner, this Court reviews such awards under an abuse of discretion standard.  *Chuisano v. United States*, 116 Fed. Cl. 276, 283 (2014); *see Saxton v. Sec'y Dep't Health & Hum. Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) (explaining that "the special master 'may' award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award").  This Court may find an abuse of discretion if "(1) the [special master's] decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) the [special master's] findings are clearly erroneous; or (4) the record contains no evidence upon which the [special master] rationally could have based its decision."  *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991).

## DISCUSSION

The Special Master erred in awarding costs and attorneys' fees without first analyzing whether Petitioner established that he had a reasonable basis to claim his injury lasted more than six months.  The Vaccine Act grants special masters the discretion to award costs and attorneys' fees to unsuccessful claimants when the special master "determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1).  Even where a petitioner has a reasonable basis for his claim and files his petition in good faith, a special master still retains discretion to deny a request for attorneys' fees.  *James-Cornelius v. Sec'y of Health & Human Serv.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).

9

This Court "relies on 'an objective standard determined by the totality of the circumstances,'" when evaluating whether a petitioner had a "reasonable basis" for his claim. *Cottingham v. Sec'y of Dep't of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (quoting *Chuisano*, 116 Fed. Cl. at 286). "[T]he quantum of objective evidence needed to establish reasonable basis for a claim . . . is 'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius*, 984 F.3d at 1379 (quoting *Cottingham*, 971 F.3d at 1346).

It is well-established that a petitioner seeking costs and fees must demonstrate that a "reasonable basis" existed for each element of his claim. *See Cottingham*, 971 F.3d at 1345-46; *Goodgame v. Sec'y of Dep't of Health & Hum. Servs.*, 157 Fed. Cl. 62, 68 (2021) (explaining that "the Vaccine Act provides specific requirements that are useful in determining whether a petitioner has established a reasonable basis"). Thus, a petitioner filing a petition under the Vaccine Act must have a reasonable basis for claiming he:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-466 (citing 42 U.S.C. § 300aa-11(c)(1)).

10

Respondent argues that Petitioner lacked a reasonable basis for elements three and four of his claim. *See* Resp. Mem. at 12. Specifically, it argues that the Special Master abused her discretion by (1) determining that Petitioner had a reasonable basis for his claim that the PCV-13 vaccine caused Petitioner's rash, and (2) failing to address the statutory requirement mandating that Petitioner experienced residual effects of his injury for more than six months. *Id.* Petitioner argues that (1) the Special Master correctly held that the PCV-13 vaccine package insert, along with medical records, demonstrated Petitioner's claim was reasonable, and (2) the Special Master's failure to explicitly address the statutory durational requirement was rational "because the medical records indicate that Petitioner's rash resulted in residual scarring and, typically, residual scarring lasts more than six months."[5] Pet.'s Mem. at 16. This Court agrees with Respondent that the Special Master erred by failing to address the Act's durational requirement; namely, whether Petitioner had a reasonable basis to claim his injury lasted more than six months. *See* 42 U.S.C. § 300aa-11(c)(1)(D)(i). As this error alone justifies vacatur and remand, the Court need not address at this time whether Petitioner had a reasonable basis to claim the PCV-13 vaccine caused his injuries.

The Special Master's conclusion that "[b]ecause Petitioner's medical records demonstrate he developed a rash postvaccination and the PCV-13 vaccine package insert states that a rash can be an adverse reaction to the vaccine . . . [p]etitioner has establish[ed] a reasonable basis to support his claim" constitutes an abuse of discretion because it does not address all five statutorily required elements of Petitioner's claim for fees and costs. Decision on Fees at 8; *see Cottingham*, 971 F.3d

---

[5] This is a severity element that may also be satisfied with proof that the petitioner seeking fees (i) died or (ii) required an in-patient hospitalization with surgical intervention. 42 U.S.C. § 300aa-11(c)(1)(D)(i). However, it is undisputed on the record before this Court that neither of those circumstances are applicable here. The Court accordingly refers to this severity element as a durational requirement.

11

at 1345-466 (citing 42 U.S.C. § 300aa-11(c)(1)).  In this case, Petitioner's claim cannot have a reasonable basis unless objective evidence supports his contention that the claimed injury lasted for more than six months.  *See Cottingham*, 971 F.3d at 1345-466; 42 U.S.C. § 300aa-11(c)(1)(D)(i).  Here, the Special Master erred in failing to analyze whether Petitioner established a reasonable basis for the Act's durational requirement.  The Special Master's failure to address this requirement is particularly troubling because Petitioner's medical records before this Court do not appear to clearly demonstrate that Petitioner meets this statutorily-mandated requirement.  In fact, the last mention of a rash or scarring in Petitioner's medical records occurred in January 2019, only four months after Petitioner received the PCV-13 vaccine.  *See* Pet. Ex. 3 at 5-6.

Despite this observation, this Court's holding does not foreclose the possibility that on remand the Special Master could find a reasonable basis for Petitioner's claim.  It may be that support exists for Petitioner's contention that the presence of a rash or scarring four months after vaccination indicates that the injury would also have been present six months after vaccination.  It is also possible that other evidence properly before the Special Master would support Petitioner's claim that injuries caused by the PCV-13 vaccine persisted for more than six months.  Or it may be that no such evidence meeting the statute's durational requirement exists.  However, each scenario requires fact-finding that the Special Master did not undertake in the first instance.  Accordingly, this Court finds it appropriate to remand Petitioner's case to provide the Special Master an opportunity to consider the statute's durational requirement and fully address whether Petitioner has met the reasonable basis threshold for bringing his claim.

## CONCLUSION

For the reasons above, Respondent's Motion for Review (ECF No. 27) is **GRANTED**. The Special Master's Decision on Attorneys' Fees and Costs (ECF No. 25) is **VACATED**, and the case is **REMANDED** to the Special Master for further proceedings consistent with this Order.

IT IS SO ORDERED.

   s/Eleni M. Roumel
ELENI M. ROUMEL
Judge

March 10, 2022
Washington, D.C.