# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-491V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| ARTHUR CONTRERAS, | * | TO BE PUBLISHED |
| Petitioner, | * | |
| v. | * | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Filed: September 30, 2021 |
| Respondent. | * | Attorneys' Fees and Costs; Reasonable Basis |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

*Paul Green*, Law Office of Paul Green, Pasadena, CA, for Petitioner.
*Sarah Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS [1]

On April 2, 2019, Arthur Contreras ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that he developed injuries including shingles, maculopapular rash on his left shoulder, post-herpetic neuritis, and other post-herpetic nervous system involvement resulting from adverse effects of concurrent Shingrix and Pneumovax[3] vaccinations he received on September 7, 2018. Pet. at 1, ECF No. 1.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

[3] The Petition incorrectly states that Petitioner received the Pneumovax vaccine. As noted in Respondent's Rule 4(c) Report, Petitioner received both the Shingrix vaccine and the pneumococcal conjugate ("PCV-

On February 5, 2021, Petitioner filed a motion for attorneys' fees and costs (hereinafter Petitioner's application for fees or "Fees App.") requesting a total of $18,540.00. Fees App., ECF No. 22. On February 18, 2021, Respondent filed a response to Petitioner's application, stating "there is no objective evidence that petitioner sustained an injury consistent with the VIS (vaccine information statement) or package insert petitioner has cited in support of a reasonable basis," thus Petitioner is not entitled to an award of fees and costs. Fees Resp. at 1, 9, ECF No. 23. Petitioner filed a reply on February 23, 2021 stating there was reasonable basis to file his claim. Fees Reply, ECF No. 24.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's application for attorneys' fees and costs and award a total of **$16,669.00**.

### I.     Procedural History

Petitioner filed his petition on April 2, 2019. ECF No. 1. This case was assigned to my docket on April 3, 2019. ECF No. 4. Petitioner filed medical records with the petition on April 2, 2019 and filed a Statement of Completion on April 5, 2019. ECF Nos. 1, 6.

On May 4, 2020, Respondent filed a Rule 4(c) Report stating this case is not appropriate for compensation. Resp't's Rep. at 1, ECF No. 16. Specifically, Respondent stated "petitioner alleged that he suffered a Table injury, but none of the alleged injuries are included in the Table for PCV-13. Petitioner therefore is not entitled to a presumption of vaccine causation," and "Petitioner has not offered a reputable scientific or medical theory establishing that PCV-13 can cause "shingles, maculopapular rash left shoulder, post-herpetic neuritis, and other postherpetic nervous system involvement." *Id.* at 5.

On July 6, 2020, Petitioner filed a status report indicating that he "prefers to simply concede that, based on the analysis in Respondent's Rule 4 report, his case should be dismissed." Pet'r's Status Rep. at 2, ECF No. 17.

On July 9, 2020, Petitioner filed a motion to dismiss his petition. ECF No. 19. On July 10, 2020, I granted that motion and issued a decision dismissing the petition. ECF No. 20.

On February 5, 2021, Petitioner filed a motion for attorneys' fees and costs. Fees App., ECF No. 22. Respondent filed a response to Petitioner's motion on February 18, 2021 contesting reasonable basis. Fees Resp., ECF No. 23. On February 23, 2021, Petitioner filed a reply. Fees Reply, ECF No. 24.

This matter is now ripe for adjudication.

### II.    Petitioner's Relevant Medical History

---

13") vaccine on September 7, 2018. *See* Ex. 2 at 49. The PCV-13 vaccine is a covered vaccine pursuant to the Vaccine Injury Table.

Petitioner received the Shingrix and PCV-13 vaccinations concurrently in his left arm on September 7, 2018. Ex. 2 at 49. Petitioner's medical history prior to vaccination included sciatica, an essential tremor, glaucoma, cataracts, mild dyspnea, actinic keratosis, and hypertension. *Id.* at 20, 32, 45, 65, 77. Petitioner was 70 years-old at the time of vaccination. *Id.* at 49.

On September 9, 2018, Petitioner presented to Angel Wings Medical Associates, an urgent care center, with "left sided back pain s/p receiving shingle [sic] and PNA vaccine Friday". Ex. 2 at 2. It was noted that '[p]ain started Friday night. Pain level 7/10. Sharp needle pain" and Petitioner also had a "maculpapular [sic] rash on his left shoulder blade around T7 region with one closed vesicle." *Id.* at 2, 5. The assessment at this visit was that Petitioner had acute thoracic back pain and a shingles outbreak. *Id.* Petitioner was directed to follow up with his primary care physician and "let them know about shingle[s] outbreak after vaccine." *Id.* at 10.

On September 11, 2018, Petitioner presented to Dr. Tejas Patel, his primary care physician (PCP), complaining of a red rash on his back and stomach. Ex. 2 at 59-61. Dr. Patel noted that Petitioner also experienced abdominal pain and went to the ER when the rash broke out. *Id.* at 61. Dr. Patel's assessment was "herpes zoster"; he prescribed Petitioner with Valtrex for seven days. *Id.*

On September 19, 2018, Petitioner returned to Dr. Patel complaining of severe pain. Ex. 2 at 57-59. Petitioner described the pain as tingling, burning, and stabbing and indicated that it was more severe at night. *Id.* at 59. Dr. Patel's assessment was that Petitioner had post-herpetic neuritis and prescribed medication for treatment. *Id.*

Petitioner returned to Dr. Patel on 10/3/2018, 10/17/2018, 11/9/2018, and 12/4/2018 for his abdominal pain and rash. Ex. 2 at 49-58.

On January 2, 2019, Petitioner saw Dr. Ahed Hanna, a neurologist, for his postherpetic neuralgia. Ex. 3 at 5-6. Petitioner's neurological exam was normal; Dr. Hanna's assessment was "other post herpetic nervous system involvement." *Id.* at 6. Petitioner returned for a follow-up on January 7, 2019 where he reported loss of balance and dizziness in addition to his pain and recovering rash. *Id.* at 3-4.

On March 14, 2019, Petitioner returned to Dr. Hanna with severe pain on the left side of his abdomen. Ex. 3 at 1-2. Dr. Hanna performed a neurological exam that was normal; Dr. Hanna's assessment remained "other post-herpetic nervous system involvement." *Id.*

No additional medical records have been filed.

### III.    Petitioner's Affidavit

Petitioner submitted an affidavit to support his petition. Ex. 4. Petitioner stated he received the Shingrix and Pneumovax vaccines[4] on September 7, 2018. *Id.* at 1. Petitioner also stated he received all his post-vaccination care from Drs. Tejas and Hanna and provided a detailed timeline

---

[4] As noted in footnote 3, Petitioner received the Shingrix and PCV-13 vaccines. This mistake is repeated throughout the affidavit.

3

of his visits. *Id.* at 1-2. At the time of the filing, Petitioner confirmed that he continues to suffer from post-herpetic neuralgia and has difficulty working as a property manager as a result of this pain. *Id.* at 4.

## IV. Parties' Arguments

Respondent argues that an expert report was not filed to support Petitioner's claim and none of Petitioner's treating physicians attributed his PCV-13 vaccination to his injuries, thus Petitioner has not provided reliable scientific or medical proof to support his claim. Fees Resp. at 3. Petitioner has filed a Vaccine Information Statement ("VIS") for the PCV-13 vaccine but that document is not sufficient to establish reasonable basis. Respondent states that Petitioner omitted pertinent language from the VIS in his fees application. *Id.* at 8. The VIS states that "redness, swelling, pain or tenderness" can occur "**where the shot is given**…" and Petitioner's maculopapular rash, which was diagnosed as shingles, is not listed as a reported adverse event for PCV-13. *Id.* at 8-9 (emphasis in original). Respondent states that because the rash was diagnosed as shingles "there is no objective evidence that petitioner sustained an injury consistent with the VIS or package insert petitioner has cited in support of reasonable basis." *Id.* at 9. Respondent also claims that Petitioner has not provided any evidence that the development of shingles the evening of vaccination is a medically acceptable timeframe from which one could infer causation. *Id.*

In response, Petitioner argues that he has demonstrated more than a mere scintilla of evidence to establish reasonable basis. Fees Reply at 1, ECF No. 24. Petitioner argues that in *Cottingham*, the Federal Circuit found that Petitioner supplied objective evidence supporting causation when she submitted medical records and a vaccine package insert. *Id.* at 2. Petitioner also reiterates that the reasonable basis standard is lower than the standard to find entitlement. *Id.* at 7. Medical records note that Petitioner experienced pain in the left side of his back after his vaccination, and that he developed a rash after vaccination. *Id.* at 5. These symptoms appeared within two days of vaccination. *Id.*

Petitioner also cites to the VIS to further substantiate his claim. Fees Reply at 6. The VIS lists,

> redness, swelling, pain, or tenderness where the shot is given, and fever, loss of appetite, fussiness (irritability), feeling tired, headache and chills…. As with any medicine, there is a very remote chance of a vaccine causing a severe allergic reaction, or other serious injury, or death…. An allergic reaction could occur after the vaccinated person leaves the clinic. If you see signs of a severe allergic reaction (hives, swelling of the face and throat, difficulty breath, a fast heartbeat, dizziness or weakness)…

Ex. 15; Fees Reply at 6. Petitioner also filed the package insert for the PCV-13 vaccine. Fees App. Ex. C. Petitioner argues that the record is clear that he developed a rash and that the location of his rash should not be confined to "where the shot is given" since rashes/hives related to a severe allergic reaction do not develop solely in that location. Fees Reply at 6. The fact that Petitioner's rash developed within two days of vaccination combined with the vaccine package insert is sufficient to provide Petitioner with reasonable basis to file his claim. *Id.* at 7.

### V. Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

#### A. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

#### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

The Federal Circuit has noted that determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 U.S. Claims LEXIS 1437 at *13 (Fed. Cir. July 6, 2021). Citing the Fourth Circuit's ruling in *Sedar v. Reston Town Ctr. Prop., LLC*, the Federal Circuit has characterized "more than a mere scintilla" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 2021 U.S. Claims LEXIS 1437 at *13, *citing Sedar v. Reston Town Ctr. Prop., LLC* (988 F.3d 756, 761 n.3 (4th Cir. 2021); *see also Kurtz v. Fels*, 63 Wash. 2d 871, 878 (Wash. 1964) (holding that proof beyond a mere scintilla requires "facts to be assessed by the senses" and something "tactile" rather than calculations); *Gibson v. Epting*, 426 S.C. 346, 352 (S.C. 2019) (describing scintilla as a "perceptible amount" and "not something conjured up by the shadows.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). A Petitioner need not provide medical or expert opinion on causation to show reasonable basis for her claim. *Cottingham*, 2021 U.S. Claims LEXIS 1437 at *19. While a Special Master may consider the absence of relevant medical opinion as a factor in determining whether a claim had reasonable basis, such absence is not dispositive of the issue. *Id.* at *16.

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

C.  Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. §

15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id*. at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

## VI. Discussion

### A. Good Faith

Petitioner is entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent does not challenge Petitioner's good faith. *See* Fees Resp. fn 4. Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

### B. Reasonable Basis

The filings in this case are minimal but include enough evidence to establish reasonable basis. The records clearly show that Petitioner developed a rash after receiving vaccinations on September 7, 2018. Ex. 2 at 2, 5, 10, 54, 55, 61. The PCV-13 vaccine package insert states that a rash can be an adverse reaction after vaccination. Fees App. Ex. C at 1. In fact, the PCV-13 vaccine package insert details systemic reactions that can occur after the PCV-13 vaccination, which include pain at injection site, fatigue, headache, muscle pain, joint pain, decreased appetite, injection site redness, injection site swelling, limitation of arm movement, vomiting, fever, chills, and rash. *Id*.

The fact that Petitioner's rash was due to shingles does not negate the fact that Petitioner developed a rash. Rash is a non-specific symptom; the package insert does not limit rash development to one that is unassociated with a specific condition. *See generally* Fees App. Ex. C. Petitioner's medical records establish that he developed a rash after his PCV-13 vaccine. The PCV-13 package insert indicates that rash can occur following vaccination. The Federal Circuit has indicated that this evidence can be sufficient to establish reasonable basis. *See Cottingham*, F.3d at 1346.

7

I additionally note that Petitioner's urgent care records contain a recommendation that he "F/U with PCP and let them know about shingle[s] outbreak after vaccine." Ex. 2 at 10. This note suggests that Petitioner's urgent care medical provider questioned the connection between Petitioner's shingles outbreak and the vaccines he received. This evidence, in combination with Petitioner's medical records and the PCV-13 package insert, constitutes more than a mere scintilla of evidence in support of the petition.

While Petitioner's evidence is thin, the standard I must apply to determine whether the petition is supported by a reasonable basis is lower than the standard to prove entitlement to compensation. Because Petitioner's medical records demonstrate he developed a rash post-vaccination and the PCV-13 vaccine package insert states that a rash can be an adverse reaction to the vaccine, I find Petitioner has establish a reasonable basis to support his claim.

### VII. Attorneys' Fees and Costs

Petitioner requests a total of $18,540.00[5] in attorneys' fees and costs. Fees App. at 7, ECF No. 22. This includes $18,120.00 for work performed and $420.00[6] for the Court's filing fee. Fees App. Ex. A at 5.

#### A. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[7]

---

[5] Petitioner's fee application includes the Court's filing fee of $400.00 however Petitioner's Fees Application, Exhibit A notes $420.00 was paid for the Court's filing fee. *See* Fees App. at 7, 9; *cf.* Fees App. Ex. A at 5. Therefore, the true amount Petitioner is requesting is $18,520.00.

[6] The Court's filing fee is $400.00.

[7] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:

Petitioner's attorney, Mr. Paul Green requests to be compensated at an hourly rate of $400.00 for 2018, $420.00 for 2019, and $430.00 for 2020. To the best of my knowledge, Mr. Green has not yet been awarded attorneys' fees in the Vaccine Program. Mr. Green practices in Pasadena, California, which is located 10 miles north of Los Angeles, California. Green Aff. at 2, ECF No. 22. Thus, his forum rate is comparable to that of Washington, DC. Mr. Green was awarded a diploma in legal practice (JD equivalent in the United Kingdom) from DeMontfort University and has practiced law since 1996. *See* Fees App. Ex. B at 2 (hereinafter "Green CV"). Mr. Green also received a LLM from the University of Southern California in 2005. *Id.* at 2.

While Mr. Green has over twenty years of legal experience, this represents one of his first cases in the Vaccine Program. Mr. Green spent hours researching the Vaccine Program and the Shingrix and PCV-13 vaccines.[8] Normally, billing to learn about the Vaccine Program is non-compensable. *See, e.g., Matthews v. Sec'y of Health & Hum. Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016); *Calise v. Secretary of Health & Hum. Servs.*, No. 08-865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011) (reducing petitioner's counsel's billings for "research into the elementary principles of vaccine litigation," noting "basic education [is] not compensable under the Program"); *Carter v. Sec'y of Health & Hum. Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007) (noting that "[A]n inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task."). While it is understandable that Mr. Green would want to educate himself on the specifics of the program and the vaccines at issue in this case, the need to perform that research suggests that he should be compensated at the lower end of the range for attorneys with his level of legal experience. This is especially true as a portion of this research concerned a vaccine not covered in the program (Shingrix). The 2018-2020 OSM Attorneys' Forum Hourly Rate Fee Schedule compensates attorneys with 20-30 years of experience at an hourly rate in the range of $370.00-$467.00. Based on the work performed by Mr. Green, I will make an adjustment to his rate and award him an hourly rate of $380.00 for 2018, $390.00 for 2019, and $400.00 for 2020.

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed.

---

http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[8] See Entries on 12/13/2018, 2/1/2019, 8/30/2019, 9/3/2019, 10/14/2019, 1/22/2020, and 7/6/2020, totaling 4.8 hours of work.

Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed. Fees App. Ex. A. I find the hours to be largely reasonable, but a small reduction is necessary due to billing for what appears to be administrative tasks.[9] These entries include "preparing civil case cover sheet," "collating exhibits" and "filing with Notice of Filing Exhibits". I will deduct 1.5 hours for these tasks, or $585.00.

Mr. Green billed 2.3 hours in 2018; 30 hours in 2019; and 10.7 hours in 2020. With his awarded hourly rate, Mr. Green is awarded $874.00 for 2018; $11,700.00 for 2019; and $4,280.00 for 2020, or a total of $16,854.00. After deducting $585.00, Mr. Green is awarded $16,269.00.

Total attorneys' fees to be awarded: **$16,269.00**

### C. Reasonable Costs

Petitioner requests $400.00 for the Court's filing fee. Fees App. at 7. This request is reasonable and shall be awarded.

Total costs to be awarded: **$400.00.**

### VIII.  Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$16,669.00**, representing reimbursement of Petitioner's final attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Mr. Paul Green.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with this decision.[10]

**IT IS SO ORDERED.**

---

[9] *See* entries on 3/28/2019, 4/2/2019 (2), 4/3/2019, 4/5/2019.

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master
